IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PROGRESSIVE CASUALTY INS. CO.,

    Plaintiff,

v.

ST. PAUL FIRE AND MARINE INS. CO.,

    Defendant.

No. C 12-04918 JSW

**ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT**

Now before the Court are the cross-motions for summary judgment filed by plaintiff Progressive Casualty Insurance Company ("Progressive") and defendant St. Paul Fire and Marine Insurance Company ("St. Paul"). Having considered the parties' pleadings and the relevant legal authority, the Court hereby denies Progressive's motion for summary judgment and grants St. Paul's cross-motion.[1]

**BACKGROUND**

The facts at issue are not in dispute. This action concerns a coverage dispute between Progressive and St. Paul regarding their respective rights and obligations to their mutual insured under their respective insurance policies for an underlying lawsuit against the insured. Progressive covered the cost of the defense and settlement of the underlying lawsuit and now seeks some contribution from St. Paul.

Progressive issued its "Directors & Officers/Company Liability Insurance Policy for Financial Institutions" to Sonoma Valley Bancorp, policy number 4548319-08, for an original policy period of July 1, 2008 to July 1, 2011 ("Progressive Policy"). (Joint Stip. of Facts, No.

---

[1] The Court OVERRULES Progressive's evidentiary objections.

1   4.) The coverage period of the Progressive Policy was subsequently amended to July 1, 2008 to
2   July 1, 2010.  (*Id.*, No. 5.)  St. Paul issued its "Broad Form PLUS+$^{SM}$ Directors and Officers
3   Liability Insurance Policy" to Sonoma Valley Bancorp, policy number EC09400585, for the
4   period July 1, 2009 to July 1, 2010 ("St. Paul Policy").  (*Id.*, No. 7.)  Shareholders brought
5   purported class actions against Sonoma Valley Bancorp and certain of its former directors and
6   officers.  (*Id.*, Nos. 9-11.)  The defendant officers and directors qualified as insured persons
7   under both the Progressive Policy and the St. Paul Policy.  (*Id.*, No. 13.)  For purposes of this
8   action, both parties agree that the shareholder lawsuit against these insured persons constitutes a
9   "Claim" for "Wrongful Acts" as defined under both the Progressive Policy and the St. Paul
10  Policy.  (*Id.*, No. 15.)

    The St. Paul Policy describes the director and officer liability coverage as follows:

> The Company will pay on behalf of any Insured Person Loss resulting from Claims first made during the Policy Period for Wrongful Acts by an Insured Person in his or her capacity as such, except to the extent that such loss is paid by any other insurance or as indemnification from any source.

(*Id.*, Ex. 2.)  The Policy also contains the following "other insurance" clause: "The Insured Person(s) and St. Paul agree that all coverage under this Policy is excess over, and will not contribute with . . . all other insurance, whenever purchased, whether such insurance is stated to be primary, excess, contributing, contingent or otherwise . . . ."  (*Id.*)  The St. Paul Policy defines "Loss" as "any amount, including Defense Expenses, that an Insured Person is obligated to pay as a result of a Claim. . . ."  (*Id.*)  St. Paul contends that this Policy provided only excess and umbrella insurance to the directors and officers and, thus, is not liable for the cost of the defense and settlement.  St. Paul describes the Policy as a "Side A policy" that "functions like a Difference in Conditions ("DIC") policy, meaning that the policy 'drops down' to provide coverage for individual directors and officers for a loss that is not covered by the underlying primary policy, or, if there is underlying coverage, the Side A policy provides coverage on an excess basis."  (Declaration of William E. Husbands, ¶ 10.)

The Progressive Policy describes the Insured Persons Liability Coverage as the following: "[t]he Insurer will pay on behalf of the Insured Persons, Loss resulting from Claims first made during the Policy Period or the Discovery Period against the Insured Persons for

2

1  which the Insured Persons are legally obligated to pay for Wrongful Acts . . . ." (*Id.*, Ex. 1.)
2  The Policy defines "Loss" as "Defense Costs and any amount which the Insured Persons or the
3  Company (if applicable) are legally obligated to pay resulting from a Claim. . . ." (*Id.*)  The
4  Progressive Policy also contains the following "other insurance" clause: "This Policy shall not
5  be subject to the terms of any other insurance.  All Loss, including Defense Costs, payable
6  under this policy, shall be excess to ... any other existing insurance regardless of whether
7  collectable, including but not limited to, any insurance under which there is a duty to defend,
8  unless such other insurance is written only as specific excess insurance over the Limits of
9  Liability provided by this Policy . . . ." (*Id.*)

## ANALYSIS

**A.     Legal Standards Applicable to Motions for Summary Judgment.**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  A fact is "material" if it may affect the outcome of the case. *Id.* at 248.  If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, that party must produce evidence which either negates an essential element of the non-moving party's claims or that party must show that the non-moving

3

1    party does not have enough evidence of an essential element to carry its ultimate burden of
2    persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir.
3    2000). Once the moving party meets its initial burden, the non-moving party must go beyond
4    the pleadings and, by its own evidence, "set forth specific facts showing that there is a genuine
5    issue for trial." Fed. R. Civ. P. 56(e).

6    In order to make this showing, the non-moving party must "identify with reasonable
7    particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275,
8    1279 (9th Cir. 1996). In addition, the party seeking to establish a genuine issue of material fact
9    must take care adequately to point a court to the evidence precluding summary judgment
10   because a court is "'not required to comb the record to find some reason to deny a motion for
11   summary judgment.'" *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th
12   Cir. 2001) (quoting *Forsberg v. Pacific Northwest Bell Telephone Co.*, 840 F.2d 1409, 1418
13   (9th Cir. 1988)). If the non-moving party fails to point to evidence precluding summary
14   judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.    The Parties' Cross Motions for Summary Judgment.**

16   Under California law, insurance contracts are to be interpreted in the same manner as
17   any other contract, with the fundamental goal of giving effect to the mutual intention of the
18   parties. *Bank of the West v. Superior Court,* 2 Cal. 4th 1254, 1264 (1992). Interpretation of a
19   contract is a question of law to be determined by the court. *Waller v. Truck Ins. Exchange*, 11
20   Cal. 4th 1, 18 (1995). If the terms of a contract are free from ambiguity, its meaning is a
21   question of law to be determined by the court solely from its language. *Dale v. Preg.*, 204 F.2d
22   434, 435 (9th Cir. 1986). A contract provision is considered ambiguous if the provision is
23   susceptible to more than one reasonable interpretation. *MacKinnon v. Truck Ins. Exchange*, 31
24   Cal. 4th 635, 648 (2003). "[W]ords in an insurance policy are to be read in their plain and
25   ordinary sense. Ambiguity cannot be based on a strained instead of reasonable interpretation of
26   a policy's terms ...." *McKee v. State Farm Fire & Cas. Co.,* 145 Cal. App. 3d 772, 776 (1983)
27   (citation omitted).

4

Extrinsic evidence may be offered when a contract term is ambiguous on its face and to expose a latent ambiguity. *Southern Pac. Transp. v. Santa Fe Pac. Pipelines, Inc.,* 74 Cal. App. 4th 1232, 1241 (1999). "The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *Pacific Gas & E. Co. v. G. W. Thomas Drayage & Rigging Co., Inc.*, 69 Cal. 2d 33, 37 (1968); *accord Wilson Arlington Company v. Prudential Insurance Co. of America,* 912 F.2d 366, 370 (9th Cir. 1990) (acknowledging that California law permits extrinsic evidence to demonstrate the existence of ambiguity even when the language of the a contract is "perfectly clear").

Here, on the first page of the St. Paul policy, it clearly provides that coverage is for "any Insured Person Loss resulting from Claims first made during the Policy Period for Wrongful Acts by an Insured Person . . . , except to the extent that such loss is paid by any other insurance . . . ." (Joint Stip. of Facts, Ex. 2.) Progressive argues that the Court should strike the second half of the sentence as a disfavored "other insurance" clause. However, there are two obstacles to Progressive's position.

First, the second half of the sentence is not a typical "other insurance" clause. Instead, it appears on the first page of the policy in the sentence describing the scope of coverage in the first instance. Although the St. Paul Policy does contain an "other insurance" provision, St. Paul is not relying on that clause. Progressive argues that St. Paul's Policy does not qualify as an excess policy because it does not identify the Progressive Policy or establish a predetermined amount of primary coverage before liability will attach. However, to the extent there is any ambiguity, the extrinsic evidence demonstrates that St. Paul and the insured intended the policy to be excess to Progressive's primary policy.

Second, courts will only proceed to determine whether "other insurance" clauses conflict and require equitable contribution if the policies at issue insure the same risk at the same level of coverage. *See Carmel Development Co. v. RLI Ins. Co.*, 126 Cal. App. 4th 502, 513 (2005) (It is a basic principal of California insurance law "that an 'other insurance' issue

5

can only arise between carriers on the same level of coverage."). In *Carmel*, the court carefully compared the two insurance policies at issue and determined that they did not provide the same level of coverage. One policy provided in the insuring clause that it was excess to that of a named primary insurer. The other policy provided that it was obligated to provide coverage only after the limits of another named policy, as well as all other coverage – primary and excess – was exceeded. *Id*. at 510-511; *see also id*. at 516 (explaining that the second policy "expressly conditioned the insurer's obligation on the exhaustion of not only [a specially named policy] limits but also those of 'any insurance policies available to any insured (whether primary, excess, excess-contingent, or otherwise).'"). Although the first policy contained an "other insurance" clause, the second policy "was more explicit in its limitations . . .", setting forth on the first page of the policy that the coverage was excess over scheduled (specifically named) and unscheduled underlying insurance. *Id*. at 511. Therefore, the court in *Carmel* found that it was not necessary "to resort to proration based on the competing 'other insurance' clauses in the two policies." *Id*. at 514.

Similarly, here, St. Paul's Policy provides in the insuring clause that it is an excess and umbrella policy. St. Paul is only obligated to provide coverage if the loss is not paid by any other insurance or other source. Progressive's Policy, on the other hand, is a primary policy. The only relevant limitation is provided in an "other insurance" provision. Therefore, the two policies do not insure the same risk at the same level of coverage. Accordingly, proration and equitable contribution is not warranted.

The Court finds Progressive other arguments to be unpersuasive as well. Accordingly, the Court finds that St. Paul did not breach any duties under its Policy to the insured and Progressive is not entitled to any equitable contribution or reimbursement from St. Paul.

///
///
///
///
///

6

**CONCLUSION**

For the foregoing reasons, the Court DENIES Progressive's motion for summary judgment and GRANTS St. Paul's cross-motion for summary judgment.

**IT IS SO ORDERED.**

Dated: May 28, 2014

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE